UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES HARRIS,

        Plaintiff,

v.                                    Case No:  2:12-cv-153-Ftm-29DNF

SECRETARY, DEPARTMENT OF
CORRECTIONS, V. LANGFORD, FNU
SEXTON, BEN MOUNT, FNU LIVIN,
FNU DUBY, B. LAROSA, JOHN
DOE, F. PAPILLON, N. THOMAS,
FNU DELUMPA, MEDICAL COMPANY
CONTRACT OF EMPLOYER OF
MEDICAL STAFF and FNU
CARROLL,

        Defendants.
_____/

**ORDER**

Plaintiff James Harris ("Plaintiff") initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1, filed March 15, 2012).  The complaint is presently before the Court for initial screening pursuant to 28 U.S.C. § 1915.[1]

---

[1]    Because Plaintiff is proceeding *in forma pauperis*, the Court is required to review his complaint to determine whether it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process to be applied *sua sponte* and at any time during the proceedings.  This review process was implemented in an effort to reduce meritless prisoner litigation. Green v. Nottingham, 90 F.3d 415, 417 (10th Cir. 1996); see H.R.Rep. No. 104-378, 104th Cong. 1st Sess. 166.

For the reasons set forth in this Order, the complaint is dismissed. However, to the limited extent set forth in this Order, Plaintiff will be allowed to amend his complaint to correct pleading deficiencies.

## I.  Complaint[2]

Plaintiff alleges that defendants Florida Department of Corrections, V. Langford, Assistant Warden Sexton, Ben Mount, Colonel Livin, Lieutenant Duby, Nurse Larosa, Nurse John Doe, F. Papillon, Nurse Thomas, Dr. Delumpa, the employer of the medical staff ("Medical Employer"), and Captain Carroll acted with deliberate indifference to his serious medical needs after he fell and hit his head after passing out in the bathroom at Hendry Correctional Institution (Doc. 1 at 10).

In support of his medical claims, Plaintiff alleges the following facts:

1.  On December 23, 2010, Plaintiff fell and hit his head in the bathroom at Hendry Correctional Institution (Doc. 1 at ¶ 1). Defendant Nurse Larosa and Defendant Nurse John Doe took thirty minutes to respond to the medical call and were told by Sergeant Richardson that his head wound would require a 23 hour observation (Doc. 1 at ¶¶ 1-3). However, no 23 hour observation

---

[2] All facts are taken from Plaintiff's Complaint and the attachments to the Complaint (Doc. 1). See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

was performed; rather Plaintiff was observed for only 65 minutes (Doc. 1 at ¶¶ 3, 4).

2.   Defendant Larosa and Defendant Doe did not perform a "neuro check to [ensure] stability and focus" or do other tests to protect Plaintiff from the possibility of a "delayed hematoma" despite Plaintiff's symptoms of visual difficulties, headaches, loss of memory, irregular heart rate, confusion, drowsiness or drainage of blood from the nose (Doc. 1 at ¶ 4).

3.   Defendant Larosa and Defendant Doe did not administer medication for pain or infection (Doc. 1 at ¶ 6).

4.   Defendant Mount escorted Plaintiff to the door of the medical department where they passed Defendant Sexton who said "good try . . . the doctor said send your ass on." (Doc. 1 at ¶ 7).   Plaintiff asserts that although he was told that Dr. Papillon had been called and had approved Plaintiff for the transport bus, he did not see Dr. Papillon on December 23, 2010 (Doc. 1 at ¶ 13).

5.   Plaintiff spoke with Defendant Duby about the pain he was experiencing and was told "that's not my problem, I'm not a doctor, move it, I have a bus to load." (Doc. 1 at ¶ 10). Plaintiff attempted to speak with Defendant Sexton about the pain he was experiencing, but was told to "shut up" by Defendant Carroll (Doc. 1 at ¶ 11).

3

6.   Plaintiff rode the bus for four hours in "excruciating pain" with no pain medicine (Doc. 1 at ¶ 14).

7.   After arrival at the Central Florida Reception Center (CFRC), Plaintiff was unable to tell anyone of the pain in his head (Doc. 1 at ¶ 15).   Neither Defendant Larosa nor Defendant Doe had alerted the CFRC of Plaintiff's accident (Doc. 1 at ¶ 19).

8.   On December 24, 2010, Plaintiff became dizzy and noticed blood when he blew his nose.   He was escorted to the medical department at the CFRC (Doc. 1 at ¶ 16).

9.   At the CFRC medical unit, Defendant Nurse Thomas began removing Plaintiff's bandages, but noted that it was stuck to his wound.   She told Plaintiff that his wound should have been sutured, but after speaking with Defendant Doctor Delumpa, determined that it was too late for sutures at that point.   She ordered pain medication and antibiotics for Plaintiff (Doc. 1 at ¶ 17).

10.   Plaintiff filed a grievance on December 28, 2010, in which he described the events that had transpired after his fall and demanded immediate release from incarceration and monetary damages (Doc. 1-1 at 3-4).   In response, Plaintiff was informed that he had been seen by the medical unit and cleared for transport to the CFRC.   The response noted that the doctor had been called and had approved Plaintiff for placement on the

4

transport bus. The response also noted that Plaintiff's wound had been cleaned and dressed prior to his departure (Doc. 1-1 at 1).

11. Plaintiff appealed the denial of his grievance, but was informed that the response had appropriately addressed the issues presented (Doc. 1-1 at 5). The response also noted that sick call was available to address any additional concerns or problems that Plaintiff might experience (Doc. 1-1 at 5).

Plaintiff alleges that, as a result of his injury, he suffers head pain that affects his ability to function normally, but that he will not take his prescribed pain medication due to the possibility of liver and kidney damage associated with long term use of the drugs (Doc. 1 at ¶ 20). Plaintiff sues each defendant in his or her individual and official capacities and seeks compensatory and punitive damages against each individual in the total amount of 3.4 million dollars (Doc. 1 at ¶ 25; Doc. 1 at 18).

## II. **Legal Standards**

Title 28 § 1915(e)(2) reads in pertinent part as follows:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ---
>
> > (A) the allegation of poverty is untrue; or
> >
> > (B) the action or appeal—

(i)      is    frivolous    or
         malicious;

(ii)     fails to state a claim
         on which relief may be
         granted; or

(iii)    seeks    monetary    relief
         against a defendant who
         is   immune   from   such
         relief.

28 U.S.C. § 1915(e)(2).

A complaint is frivolous under § 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," or when the claims rely on factual allegations that are clearly baseless. Id. at 327; Denton v. Hernandez, 504 U.S. 25, 31 (1992).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)[.]"). A complaint fails to state a claim when it does not include "enough factual matter" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1249 (2009) (explaining that

6

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").

In making the above determinations, all factual allegations in the complaint must be viewed as true. <u>Brown v. Johnson</u>, 387 F.3d 1344, 47 (11th Cir. 2004). "However, the court need not accept inferences drawn by [Plaintiffs] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." <u>In re Delta/AirTran Baggage Fee Antitrust Litig.</u>, 733 F.Supp.2d 1348, 1358 (N.D. Ga. 2010). Moreover, the Court must read the plaintiff's pro se allegations in a liberal fashion. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Miller v. Stanmore</u>, 6356 F.2d 986, 988 (5th Cir. 1981).

## II. <u>Analysis</u>

To state a claim under § 1983, a plaintiff must allege: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law. <u>Doe v. Sch. Bd. of Broward Co.</u>, 604 F.3d 1248, 1265 (11th Cir. 2010). Construing Plaintiff's complaint liberally, he raises Eighth Amendment "deliberate indifference" claims against each defendant.

> ### a. *Plaintiff's claims against each defendant in his or her official capacity are barred by Eleventh Amendment immunity*

Plaintiff seeks monetary damages against all defendants in his or her official capacity (Doc. 1 at ¶ 25). It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer. See McMillian v. Monroe County, Ala., 520 U.S. 781, 785 n. 2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985). In Zatler v. Wainwright, the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's [E]leventh [A]mendment immunity in section 1983 damage suits. Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.

802 F.2d 397, 400 (11th Cir. 1986) (internal citations omitted). Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id.

In accordance with the foregoing, the claims for monetary damages against Defendants Florida Department of Corrections, Langford, Sexton, Mount, Livin, Duby, Larosa, John Doe, Papillon, Thomas, Delumpa, Medical Employer, and Carroll in each defendant's official capacity are dismissed as frivolous under § 1915(e)(2)(B)(i) and (iii) because these defendants are immune

from suit in their official capacities. <u>See</u> <u>Neitzke</u>, 490 U.S. at 325.

### b. Plaintiff has not stated a claim for deliberate indifference against any defendant

In <u>Estelle v. Gamble</u>, the United States Supreme Court described the boundary between medical malpractice and § 1983 claims alleging cruel and unusual punishment:

> [I]n the medical context. An inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. 97, 106 (1976). To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010).

Thus, on the most general level, deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness[.]" Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).  Accordingly, a "simple difference in medical opinion" does not constitute deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

The seriousness of a medical need is an objective inquiry. Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted) (internal quotation marks omitted).  In the instant case, Plaintiff alleges that he hit his head after passing out in the bathroom.  Although such a fall is not necessarily a *per se* serious injury, Plaintiff does assert that he sought, and received medical treatment for his head wound. Accordingly, for § 1915(e)(2)(B) purposes only, Plaintiff has sufficiently alleged a serious medical need sufficient to satisfy the objective element of the analysis.

The next step requires a consideration of the subjective component: whether the defendants were deliberately indifferent to that serious medical need.  In evaluating claims of deliberate indifference, the Eleventh Circuit has considered: (1) indifference by prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; and (3) interference with treatment once prescribed. See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007).

### 1.   *Nurse Larosa and Nurse John Doe*

Plaintiff alleges that Nurse Larosa and Nurse John Doe were deliberately indifferent to his serious medical needs because it took thirty minutes for them to respond to his fall, even though the medical station was only three minutes away from where he fell.  He also alleges that he should have been placed under a twenty-three hour observation after his fall and that the nurses did not provide Plaintiff with pain medication.

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence."  "[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care,

11

but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir.1997).   Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).   For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference.   H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

Plaintiff has not stated that Defendant Larosa or Defendant Doe were subjectively aware of Plaintiff's serious medical need when they delayed responding to his fall.   Plaintiff has also not alleged that the delay was for non-medical reasons or that the delay exacerbated his problems or resulted in substantial harm.   See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (delay that results in substantial harm is evidence of deliberate indifference).   At most, Plaintiff has alleged a case of mere negligence on the part of these defendants, and

negligence is not cognizable in a § 1983 claim.  See Owens v. City of Atlanta, 780 F.2d 1564, 1566 (11th Cir. 1986).

Plaintiff also claims that Defendants Larosa and Doe were deliberately indifferent to his serious medical needs because they did not order a twenty-three hour observation as recommended by Sergeant Richardson.  Plaintiff does not allege that Sergeant Richardson was a medical professional so that the nurses were obligated to heed her advice to observe Plaintiff for twenty-three hours or that the sixty-five minute observation performed by the nurses was inadequate.  Rather, Plaintiff merely disagrees with the course of treatment performed by the nurses.  A mere difference of opinion between an inmate and the prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation; nor does a difference of opinion among medical personal over questions of treatment give rise to a constitutional claim.  Estelle, 429 U.S. at 107 (holding that matters of "medical judgment" do not give rise to a § 1983 claim; and upon reinstating a district Court's dismissal of a complaint which alleged that more should have been done to diagnose and treat a back injury, the Court stated that "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.").

13

Although Petitioner alleges that Defendants Larosa and Doe failed to administer medication for pain or infection, he does not allege that he asked for pain medication or that his wound became infected. Again, Plaintiff's disagreement with the course of treatment performed by these defendants does not entitle him to relief under 42 U.S.C. § 1983. Estelle, 429 U.S. at 107.

Accordingly, the deliberate indifference claims against these defendants are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. *Dr. Papillon*

Plaintiff's only allegation against Dr. Papillon is that he was persuaded by Defendant Sexton into "heedlessly disregard[ing] the interests of Plaintiff's health and safety." (Doc. 1 at ¶ 8). Presumably, Plaintiff believes that Dr. Papillon would have prescribed a different course of treatment for his head injury if Defendant Sexton had not interfered. Besides being completely speculative on Plaintiff's part, this claim is merely a statement of disagreement with Dr. Papillon's diagnosis and course of treatment and is not cognizable in a 42 U.S.C. § 1983 action. See Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").

14

To the extent Plaintiff alleges that Dr. Papillon was negligent because he diagnosed Plaintiff by telephone instead of personally examining him or failed to alert the CFRC of Plaintiff's head injury, such allegations are, at most, claims of negligence or medical malpractice and do not state a claim under the Eighth Amendment. See Barnes v. Martin Cty. Sheriff's Dep't, 326 F. App'x 533, 535 (11th Cir. 2009) ("A 'complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'")(quoting Estelle, 429 U.S. at 106).

Because Plaintiff has not alleged sufficient facts to show a plausible claim under § 1983, particularly with regard to the subjective component of his inadequate medical care claim, the § 1983 claims against Dr. Papillon in his individual capacity are dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   Nurse Thomas and Dr. Delumpa

Plaintiff asserts that Defendant Nurse Thomas and Defendant Doctor Delumpa at the CFRC were deliberately indifferent to his serious medical needs because they failed to perform additional testing on his head after his transfer from Hendry Correctional Institution (Doc. 1 at ¶ 18).  Plaintiff does assert that Defendant Thomas changed the dressing on Plaintiff's wound, and spoke with Dr. Delumpa who prescribed pain medication and

15

antibiotics for his head (Doc. 1 at ¶¶ 17-18). Plaintiff's claims against these defendants are based solely on his disagreement with the course of treatment offered to him. A "simple difference in medical opinion" does not constitute deliberate indifference. Waldrop, 871 F.2d at 1033.

Because Plaintiff has not alleged any facts to show a plausible claim under § 1983 against Defendants Thomas and Delumpa, the claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.   *Defendant Employer of Medical Staff*

Plaintiff makes no specific allegation against the "Medical Company Under Contract on 12-23-2010" listed as a defendant in his complaint (Doc. 1 at 6). To the extent Plaintiff seeks to hold the medical defendants' employer responsible for the acts of the various named medical employees against whom Plaintiff directs allegations of deliberate indifference, the complaint is inadequate.

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983

simply on a theory of respondeat superior.[3]   See Kruger v. Jenne,
164 F.Supp.2d 1330, 1333–34 (S.D. Fla. 2000) (citing Powell v.
Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining
that [supervisor] which provided medical care for state inmates
could not be sued under § 1983 on respondeat superior theory).

Here, Plaintiff only mentions Defendant Medical Company in
the caption of his complaint.   Similarly, Plaintiff fails to
allege a "causal connection" between Defendant Medical Company
and the asserted constitutional violation.   See Zatler, 802 F.2d
at 401 (requiring an affirmative causal connection between a
defendant and an alleged constitutional violation).   The "causal
connection" can be established "when a history of widespread
abuse puts the responsible supervisor [or employer] on notice of
the need to correct the alleged deprivation, and he fails to do
so[,]" Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990), or
when "the supervisor's [or employer's] improper 'custom or
policy . . . result[s] in deliberate indifference to
constitutional rights.'"   Hartley, 193 F.3d at 1269 (quoting
Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).   A

_____

[3] Private contractors that run prisons do act under color of
state law for purposes of § 1983 liability.   Farrow v. West, 320
F.3d 1235, 1239 n. 3 (11th Cir. 2003). Nevertheless, as
explained herein, the principle that respondeat superior is not
a cognizable theory of liability under § 1983 holds true
regardless of whether the entity sued is a state, municipal, or
private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30
(11th Cir. 1992).

causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendant Medical Company. Accordingly, Plaintiff's claims against Defendant Medical Company are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. *Warden Langford*

Plaintiff makes no specific allegation against Defendant Warden Langford other than to say that she "had the opportunity and the authority to correct a wrong but did nothing about it." (Doc. 1 at ¶ 22). To the extent that Plaintiff seeks damages from Defendant Langford because of the denial of his grievances, he has not stated a constitutional claim. Bingham v. Thomas, 654 F.3d 1171, 1177–78 (11th Cir. 2011) (stating prison grievance procedure does not provide an inmate with a constitutionally protected interest). Accordingly, the claims against Defendant Langford are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6. *Assistant Warden Sexton, Ben Mount, Colonol Livin, Captain Carroll, and Sergeant Duby*

Plaintiff appears to generally assert that these defendants interfered with his medical treatment because they effectuated his transfer from Hendry Correctional Institution to the CFRC without ensuring that multiple medical tests were performed on Plaintiff's head (Doc. 1 at ¶¶ 7, 9, 10-12). However, the pleadings attached to Plaintiff's complaint clearly state that Dr. Papillon had been contacted prior to transfer and that the doctor had approved Plaintiff's transfer to the CFRC (Doc. 1-1).

This Court is not required to accept Plaintiff's speculation that these defendants somehow conspired to overcome Dr. Papillon's will and force the doctor to "heedlessly disregard the interests of Plaintiff's health and safety" to have him transferred to the CFRC (Doc. 1 at ¶ 8). See Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6)); Iqbal, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not [shown] – that the pleader is entitled to relief.") (internal quotations omitted).

Accordingly, Plaintiff has not shown a causal connection between the actions of these defendants and his allegedly deficient medical care, and the claims against them are

dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.    Conclusion

Plaintiff's claims for monetary damages against all defendants in their official capacities are dismissed with prejudice as barred by Eleventh Amendment immunity. Plaintiff's individual capacity claims against Defendants Warden Langford, Assistant Warden Sexton, Ben Mount, Colonel Livin, Lt. Duby, B. Larosa, John Doe, F. Papillon, N. Thomas, Dr. Delumpa, and Medical Company are dismissed for failure to state a claim upon which relief may be granted.

Plaintiff will be allowed to amend his complaint to state individual capacity claims against Defendants Larosa, Doe, Papillon, Sexton, Mount, Livin, and/or Duby. However, Plaintiff should amend his complaint only if the facts support a conclusion that these defendants were directly and personally involved in the deprivation of a constitutional right. Plaintiff's amended complaint will also be subject to review pursuant to 28 U.S.C. § 1915(e) and will be dismissed if Plaintiff fails to state claims upon which relief may be granted.

To amend his complaint, Plaintiff should completely fill out a new civil rights complaint form, marking it **Amended Complaint**. The amended complaint must include all of

Plaintiff's claims he intends to assert; it should not refer back to any earlier complaint. Plaintiff is warned that the filing of an amended complaint replaces all previous complaints, and claims that are not re-alleged are deemed abandoned. See In re Wireless Telephone Federal Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005).

Plaintiff is reminded that, although he filed this action as a *pro se* litigant, he is still required to plead a complaint that complies with the Federal Rules of Civil Procedure. GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)(holding that even in the case of *pro se* litigants, a court does not have license to serve as de facto counsel for a party or to re-write an otherwise deficient pleading in order to sustain an action), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)(finding that a *pro se* litigant is subject to a court's rules and to the Federal Rules of Civil Procedure).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . ." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to give notice to the other party and not to formulate issues or fully summarize the facts involved. Clausen & Sons, Inc. v. Theo. Hamm Brewing

21

Co., 395 F.2d 388, 390 (8th Cir. 1968).    District courts, when confronted with a complaint that does not comply with Rule 8(a), have been instructed by the Eleventh Circuit to intervene at the earliest possible moment in the proceedings and require the plaintiff to re-plead his entire case. Pelletier v. Zweifel, 921 F.2d 1465, 1522 (11th Cir. 1991) (abrogated on unrelated grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)). Accordingly, to the extent Plaintiff wishes to file an amended complaint, he should ensure that the complaint complies with Rule 8(a) of the Federal Rules of Civil Procedure.

Accordingly, it is now

**ORDERED:**

1.    All official capacity claims against the defendants are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii);

2.    All other claims against the defendants are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

3.    Plaintiff may file an amended complaint within **FOURTEEN (14) DAYS** of this Order and in compliance with the Court's directions; and

3.    If Plaintiff does not file an amended complaint within fourteen days, the Court will issue a separate order directing

22

the Clerk of the Court to close this case and to enter judgment
in favor of Defendants.

　　　**DONE** and **ORDERED** in Fort Myers, Florida, on this ___18th__ day
of November, 2013.

_____

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


SA:  OrlP-4  11/14
Copies: James Harris